# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| TEXAS MEDICAL TECHNOLOGY INC. f/k/a TEXAS MEDICAL CENTER SUPPLY LLC, § § § § § § § § § § § § § § § § | Case No. 4:23-cv-01537 |
| Plaintiff, | |
| v. | |
| BERRY GLOBAL INC.; BONLAM, S.A. de C.V.; TEXTILES SHAMEN TEXAS LLC; TEXTILES SHAMEN, S.A. de C.V.; SHLOMO MIZRAHI; and ELIRAN SEGEL, | |
| Defendants | |

## BERRY AND BONLAM'S REPLY IN SUPPORT OF THEIR
## RULE 12(b)(6) MOTION TO DISMISS (Dkt. 20)

**TABLE OF CONTENTS**

I. TMT's (new) breach of contract theory fails, too. ............................................................. 1

II. TMT cannot salvage its implied warranty claims. ............................................................ 2

    A. TMT cannot avoid Hininger. ................................................................................. 2

    B. TMT does not sufficiently plead the implied warranty of merchantability. ......... 3

    C. TMT does not sufficiently plead the implied warranty of fitness for a particular purpose. ................................................................................................... 4

III. TMT cannot salvage its negligence or negligent misrepresentation claims. .................... 4

    A. TMT's Response abandons its negligence claim. .................................................. 4

    B. TMT cannot avoid the economic loss rule. ........................................................... 5

    C. TMT fails to meet Rule 9(b) and does not establish a duty to disclose. ............... 6

IV. TMT's cursory response on its fraud claim fails. .............................................................. 7

    A. Rule 9(b) requires dismissal of TMT's fraud claim. ............................................. 7

    B. Third-Party beneficiaries cannot sue for fraudulent inducement. ......................... 7

    C. The economic loss rule applies to fraud claims. ................................................... 7

    D. TMT does not plead out-of-pocket fraud damages. .............................................. 9

V. TMT abandoned its DTPA claims. ..................................................................................... 9

VI. TMT's Complaint should be dismissed with prejudice. ..................................................... 9

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ace Am. Ins. Co. v. Huntsman Corp.*,
255 F.R.D. 179 (S.D. Tex. 2008)..................................................................................1

*Allied N. Am. Ins. Brokerage of Tex., L.L.C. v. Diamond Pump & Transport, LLC*,
2015 WL 5172983 (Tex. App.—Eastland 2015, no pet.)..............................................5

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
297 S.W.3d 768 (Tex. 2009).........................................................................................5

*Bakhico Co., Ltd. v. Shasta Beverages, Inc.*,
1998 WL 25572 (N.D. Tex. 1998)................................................................................3

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) .....................................................................................6, 7

*Bohnsack v. Varco, L.P.*,
668 F.3d 262 (5th Cir. 2012).........................................................................................8

*Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003).......................................................................................10

*Equistar Chems., L.P. v. Dresser-Rand Co.*,
240 S.W.3d 864 (Tex. 2007).........................................................................................6

*Erwin v. Tex. Health Choice, L.C.*,
187 F. Supp. 2d 661 (N.D. Tex. 2002) .........................................................................7

*Estep v. Yuen Yung*,
2015 WL 13804249 (W.D. Tex. 2015).........................................................................7

*First Bank v. Brumitt*,
519 S.W.3d 95 (Tex. 2017)......................................................................................1, 2

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
960 S.W.2d 41 (Tex. 2001)...........................................................................................8

*Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Sols., Inc.*,
954 F.3d 804 (5th Cir. 2020) ...............................................................................5, 6, 9

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ......................................................................................10

*Haase v. Glazner*,
    62 S.W.3d 795 (Tex. 2001)..........................................................................................7, 8

*Heil Co. v. Polar Corp.*,
    191 S.W.3d 805 (Tex. App.—Fort Worth 2006, pet. denied) ........................................8

*Hininger v. Case Corp.*,
    23 F.3d 124 (5th Cir. 1994) .......................................................................................2, 3

*Jordan v. Brumfield*,
    687 F. App'x 408 (5th Cir. 2017) .................................................................................10

*MCI Telecom. Corp. v. Tex. Utilities Elec. Co.*,
    995 S.W.2d 647 (Tex. 1999)...........................................................................................1

*McKinney v. Irving Indep. Sch. Dist.*,
    309 F.3d 308 (5th Cir. 2002) .......................................................................................10

*Med. City Dallas, Ltd. v. Carlisle Corp.*,
    251 S.W.3d 55 (Tex. 2008).............................................................................................8

*Polaris Indus., Inc. v. McDonald*,
    119 S.W.3d 331 (Tex. App.—Tyler 2003, no pet.) .......................................................4

*Reinagel v. Deutsche Bank Nat'l Trust Co.*,
    735 F.3d 220 (5th Cir. 2013) .........................................................................................1

*Rozenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) .......................................................................................10

*Sharyland Water Supply Corp. v. City of Alton*,
    354 S.W.3d 407 (Tex. 2011)...........................................................................................8

*Sterling Chems. Inc. v. Texaco Inc.*,
    259 S.W.3d 793 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)..........................5

*Thomas v. Chevron U.S.A., Inc.*,
    832 F.3d 586 (5th Cir. 2016) .........................................................................................9

*W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*,
    649 S.W.3d 461 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ..........................7

*Zorilla v. Aypco Constr. II, LLC*,
    469 S.W.3d 143 (Tex. 2015)...........................................................................................9

**Statutes**

Tex. Bus. & Com. Code § 2.314(b)(1)....................................................................................3

Tex. Bus. & Com. Code § 2.315 ................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 15(a)(1)(B)..........................................................................................................9

Defendants Berry Global Inc. and Bonlam S.A. de C.V. (collectively, "Berry") jointly file this Reply in Support of their Rule 12(b)(6) Motion to Dismiss (Dkt. 20, the "Motion") Plaintiff Texas Medical Technology, Inc.'s ("TMT") Complaint (Dkt. 1, the "Complaint").

## I.     TMT's (new) breach of contract theory fails, too.

Berry's Motion explained that TMT fails in its pleaded breach of contract claim, based on a "contract" that allegedly formed through nebulous "communications" between TMT and Berry. *See* Compl. ¶ 37; Mtn. § II.A. Presumably persuaded, TMT's Response to the Motion ("Response," Dkt. 27) pivots to a new breach theory: that TMT was a third-party beneficiary of *Shamen*'s contract with Berry. Resp. at 21. This theory appears nowhere in the Complaint. Failing to "plead third-party beneficiary as an independent basis" for contractual liability is reason enough to reject the theory. *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 199 (S.D. Tex. 2008).

In any event, TMT does not allege facts supporting a third-party-beneficiary theory. The "presumption that parties contracted [only] for themselves" cannot be overcome "unless it clearly appears that they intended a third party to benefit from the contract." *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013). The "clear indication" of intent to benefit a third party must appear "in the contract," *MCI Telecom. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999), so "courts must look solely to the contract's language." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). "[A]ny implied intent … is insufficient." *Id.* at 103.

TMT does not even plead the existence of a written contract between Shamen and Berry— much less its terms. The Court cannot "look solely to the contract's language" to search for third-party-beneficiary terms because no such express contract is even described in the Complaint. And if there is an implied contract between Shamen and Berry, TMT cannot be a third-party beneficiary of it because a "court will not create a third-party beneficiary contract by implication." *See MCI Telecom*, 995 S.W.2d at 651. TMT now contends that Berry and Shamen contracted "directly and

1

specifically to benefit TMT" (Resp. at 21), but that assertion (i) would be conclusory even if pleaded, and (ii) is insufficient unless such intent appears in a Berry-Shamen contract. TMT further contends that "TMT was aware of the contract" between Berry and Shamen (Resp. at 21), but it does not "matter that the third party intended or expected to benefit from the contract." *First Bank*, 519 S.W.3d at 102. What matters are the parties' clear, contractually expressed intentions.

II.     **TMT cannot salvage its implied warranty claims.**

   A.     **TMT cannot avoid *Hininger*.**

Berry's Motion explained that the Fifth Circuit's decision in *Hininger* precludes implied-warranty liability against an upstream component supplier like Berry. *See* Mtn. at 9-11, 13; *Hininger v. Case Corp.*, 23 F.3d 124, 129 (5th Cir. 1994). TMT's Response does not contend that, as to TMT, Berry was something other than an upstream component supplier.[1]

To be sure, one fact underlying *Hininger* was that the plaintiff "lack[ed] any expectation that [] the upstream component supplier[] would respond to defects in the finished product." 23 F.3d at 129. But TMT pleads no facts indicating that it expected Berry to remedy any defects "in the *finished product*": i.e., the gowns fabricated by Shamen. First, TMT cites its allegation that Berry communicated with TMT to "request[] information to open an account with Berry and information related to the Product TMT needed." Resp. at 13 (quoting Compl. at 5). Merely "requesting information" about a *component* of the gowns—the only "product" Berry is alleged to have supplied is *fabric*, *see* Mtn. at 10—is not an assurance that Berry would stand behind the finished *gowns*, which were manufactured by others. Second, TMT cites an alleged conversation from *after* Berry supplied Shamen with the fabric (the so-called "Berry Call"). Resp. at 13 (quoting

---

[1] TMT also makes the point that "a plaintiff *can* recover on an implied warranty claim against an upstream defendant." Resp. at 12 (citing *MAN Engines & Components Inc. v. Shows*, 434 S.W.3d 132, 137 (Tex. 2014); *Nobility Homes of Texas Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex. 1977)). True enough—as against upstream sellers of *finished products*, not upstream sellers of components.

2

Compl. at 10-11). As TMT alleged, the only assurances in that *ex post* conversation were about "additional fabric"—a "totally different product"—to be supplied *in the future*. *See id.* TMT's claims are about fabric in which defects allegedly arose in or before April 2021. *See* Compl. ¶ 23. The *ex post* call could not have given TMT an expectation that Berry "would resolve any problem [TMT] might experience" with "totally different" fabric sold months prior (much less any problem with the "finished product," of which that fabric was a component). *See Hininger*, 23 F.3d at 129.

Also, TMT pleads that its assurances came from Shamen, not Berry. TMT claims "Shamen represented and warranted" in the "TS Supply Contract" that the gowns would "fulfil[l] all technical specifications," and that TMT "relied on these representations and warranties." Compl. ¶ 16. By relying on alleged assurances from its contractual counterparty (i.e., Shamen) regarding the finished product, TMT precluded any claim that it was expecting to look to Berry for such assurances. *See Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, 1998 WL 25572, at *9 (N.D. Tex. 1998) (plaintiff's agreement made intermediary "totally responsible" for the finished product").

    **B.**    **TMT does not sufficiently plead the implied warranty of merchantability.**

Berry showed that TMT failed to plead facts supporting its allegation that Berry's fabric was "unfit for its ordinary purpose." Mtn. at 12; Compl. ¶ 47. So TMT again pivots to a new, unpleaded theory. Now it asserts that its merchantability claim arises, not because the fabric was unfit for its ordinary purpose, but because the fabric did not match its "description." *See* Resp. at 14. The implied warranty of merchantability does include a warranty that the goods will "pass without objection in the trade under the *contract* description." Tex. Bus. & Com. Code § 2.314(b)(1) (emphasis added). But TMT does not plead the content, or even the existence, of a "contract description" for the fabric Berry sold Shamen. TMT pleads that the fabric Berry supplied "did not meet the required levels of liquid permeability for Level 3 protection," Compl. ¶ 26, but *not* that "products that are sold in [Berry's] line of trade under the [same] contract description" do.

3

*See Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.). Nor does TMT plead that there was any contractual provision requiring that Berry supply fabric meeting the required levels of liquid permeability for Level 3 protection.

### C. TMT does not sufficiently plead the implied warranty of fitness for a particular purpose.

For the implied warranty of fitness for a particular purpose, TMT must allege that using the fabric Berry supplied to manufacture "Level 3" gowns is an "unusual" purpose. *See* Mtn. at 13-14. TMT contends that this argument is unfair, because Berry also pointed out that TMT failed to plead that the manufacture of "Level 3" gowns was the fabric's "ordinary" purpose (as relevant to merchantability). Resp. at 14. True, Rule 8(d)(3) allows TMT to make two "inconsistent claims," but TMT must plausibly "state" both claims. The issue is not that TMT alleges both "ordinary purpose" and "unusual purpose"; the issue is that TMT alleges neither.

Nor does TMT plausibly allege that it relied on Berry's skill or judgment "at the time of contracting." *See* Mtn. at 14-15 (discussing Tex. Bus. & Com. Code § 2.315). TMT responds that "TMT and Berry had many discussions about what exactly TMT needed, both before and after Berry provided defective fabric." Resp. at 15. But "discussions about what exactly TMT needed" are allegations of Berry's awareness of TMT's needs, not allegations of TMT's reliance on Berry's skill or judgment, which the statute requires. *See* § 2.315 cmt. 1 ("The buyer, of course, must actually be relying on the seller."). And "discussions … after Berry provided" the fabric are irrelevant to TMT's reliance "at the time of contracting" and thus irrelevant to this warranty. *Id*.

## III. TMT cannot salvage its negligence or negligent misrepresentation claims.

### A. TMT's Response abandons its negligence claim.

TMT pleads claims for negligent misrepresentation and simple negligence. *See* Compl. ¶¶ 54(a-c). TMT has now abandoned its simple negligence claim, arguing only that its negligent

4

misrepresentation claim (partially) survives the economic loss rule. Resp. at 17-18. TMT's negligence claim should therefore be dismissed. *See Allied N. Am. Ins. Brokerage of Tex., L.L.C. v. Diamond Pump & Transport, LLC*, 2015 WL 5172983, at *4 (Tex. App.—Eastland 2015, no pet.) ("Negligent misrepresentation is a separate cause of action" from a "pure negligence" claim.).

### B.     TMT cannot avoid the economic loss rule.

TMT concedes that "some" of the damages it seeks for negligent misrepresentation are barred by the economic loss rule, but does not identify which. Resp. at 18. In truth, all of TMT's alleged damages are barred. While "out of pocket" damages may be recovered in tort, any "benefit of the bargain damages" are barred from recovery by the economic loss rule. *Sterling Chems. Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797-98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied);[2] *see also Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020) ("[L]oss to the purchaser of the benefit of the bargain with the seller" is "recoverable [only] in contract rather than tort.").

All of TMT's alleged damages are benefit-of-the-bargain damages. TMT pleads only lost profits resulting from lost contracts and customers. Compl. ¶¶ 14, 27, 30; Resp. at 17-18. But "lost profits on the bargain" fall within the "benefit-of-the-bargain measure." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 776 (Tex. 2009). Thus, when "a defect in a product deprives a buyer of profits, those are purely economic damages recoverable only in contract." *Golden Spread*, 954 F.3d at 808. To the extent TMT is trying to recover damages for the amount it paid for the allegedly defective gowns, those too are benefit-of-the-bargain damages, because "a defective product causing damage to itself is not enough"; to get around the economic loss rule, TMT would

---

[2] TMT cites *Sterling Chemicals* for a much broader proposition, seemingly that any damages resulting from the plaintiff's "reliance" on the defendant are recoverable in tort. *See* Resp. at 17. That is not what *Sterling Chemicals* says. Nor could it be: "reliance" is an element of all misrepresentation torts, meaning that damages caused by misrepresentation are necessarily "pecuniary losses" resulting from "reliance."

5

need to allege that the "defective product damage[d] other property," but TMT cannot. *See id.* at 808-09; *see also Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) ("The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.").

        **C.**        **TMT fails to meet Rule 9(b) and does not establish a duty to disclose.**

Without any reference to what Rule 9(b) requires, TMT argues it "adequately alleged facts, with the particularity required by Rule 9(b)," supporting negligent misrepresentation. Resp. at 16-17. But the refrain that Rule 9(b) requires "the who, what, when, where, and how" is not a suggestion—it is a requirement. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003). The only date TMT references is the "September 27, 2021" date of the so-called "Berry Call"—an *ex post* conversation that cannot have been an actionable misrepresentation. Resp. at 16 (quoting Compl. at 11). TMT fails to identify a single person who made the alleged misrepresentations, and does not allege the content of any misrepresentations—instead referring merely to communications "requesting [unspecified] information." *Id.* (quoting Compl. at 5).

Relatedly, TMT does not plead facts giving rise to a duty to disclose (as relevant to those of its negligent-misrepresentation allegations based on omissions, *see* Mtn. at 18). Its Response contends that Berry made "partial representations that prompted its duty to make full disclosure"—specifically, "representations regarding its ability to produce fabric that would satisfy TMT's requirements." Resp. at 18 (quoting Compl. at 5). But the referenced portion of the Complaint, as to Berry, says only that Berry "request[ed] information" related to "open[ing] an account" and unspecified "information related to the Product TMT needed." Compl. at 5, ¶ 18. TMT does not allege who at Berry indicated that Berry's fabric would meet "TMT's requirements," when that indication was made, or what those "requirements" were. Rule 9(b) requires much more.

6

IV. **TMT's cursory response on its fraud claim fails.**

    A. **Rule 9(b) requires dismissal of TMT's fraud claim.**

TMT's Response protests that it sufficiently pleads unspecified "representations," but like TMT's Complaint, it does not say what was said, by whom, or when. Resp. at 19-20. TMT's fraud claims should thus be dismissed under Rule 9(b). *See Benchmark Elecs.*, 343 F.3d at 723.

    B. **Third-Party beneficiaries cannot sue for fraudulent inducement.**

According to TMT, it can sue for fraudulent inducement of a Shamen-Berry contract because TMT was a third-party beneficiary. Resp. at 20. This theory fails because TMT was not a third-party beneficiary. *See supra* § I.

This theory also fails because third-party beneficiaries lack standing to sue for fraudulent inducement of a contract. *See Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001) ("[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement ***between the parties.***" (emphasis added)). TMT cites no authority for the notion that third-party beneficiaries can sue for fraudulent inducement. Courts that have addressed the question have ruled that they cannot. *See Erwin v. Tex. Health Choice, L.C.*, 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002) (plaintiff "lacks standing to bring fraudulent inducement" claim because the "rights of third-party beneficiaries to sue a party to the contract extend only to a cause of action for breach of contract"); *Estep v. Yuen Yung*, 2015 WL 13804249, at *3 (W.D. Tex. 2015) ("[E]ven assuming the Individual Plaintiffs were third party beneficiaries, they would still lack capacity to bring a claim for fraudulent inducement under the Agreement.").

    C. **The economic loss rule applies to fraud claims.**

Under Texas law, the economic loss rule does not apply to fraudulent inducement claims, but it does apply to all other species of fraud. *See W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 487-88 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (fraud

7

claims that were "not claims for fraudulent inducement of the contract … do not fall within the exception to the economic loss rule for fraudulent inducement claims"); *see also Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 816-17 (Tex. App.—Fort Worth 2006, pet. denied) (rejecting argument that exception to economic loss rule "is not limited to fraudulent inducement" and applying economic loss rule because plaintiff asserted a claim for "'fraud,' not fraudulent inducement").[3]

The only contrary authority TMT cites is *Sharyland Water*. Resp. at 20. To be sure, that case has a long discussion of the "economic loss rule," and includes "fraud" among a list of causes of action in which courts have "allowed recovery of economic damages." *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011).

But the species of the "economic loss rule" discussed there is *not* the species that precludes recovery in tort for benefit-of-the-bargain damages. Instead, the court was discussing "a different sort of economic loss rule—one that says you can never recover economic damages for a tort claim," because for certain torts, economic damages are "recoverable only if they are accompanied by actual physical injury or property damage." *Id.* at 418-19; *see also id.* at 418. While these two rules are both called the "economic loss rule," they are not the same thing. The rule at issue here forbids recovery in tort "[w]hen the injury is only the economic loss to the subject of a contract itself." *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008) (quoting *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 282 (Tex. 1990)). That rule prohibits recovery of benefit-of-the-bargain damages for a non-fraudulent-inducement fraud.

---

[3] In *Formosa Plastics*, the Texas Supreme Court carved out an exception to the economic loss rule for fraudulent inducement claims, but "*Formosa Plastics* should not be construed to say that fraud and fraudulent inducement are interchangeable." *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001) (discussing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 44-47 (Tex. 2001)); *see also Bohnsack v. Varco, L.P.*, 668 F.3d 262, 275-76 (5th Cir. 2012) (explaining that while *Formosa Plastics* permits "[b]enefit-of-the-bargain damages … in cases of fraudulent inducement," "according to *Haase*, benefit-of-the-bargain damages are normally not appropriate measures of damages for common law fraud claims").

8

### D. TMT does not plead out-of-pocket fraud damages.

Because TMT cannot enforce a contract with Berry (either the one it pleaded, *see* Mtn. at 4-6, or a Shamen-Berry contract, *see supra* § I), it cannot recover benefit-of-the-bargain damages in fraud, and is instead limited to out-of-pocket damages. *See Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) ("[A]bsent an enforceable contract, a fraud claimant may not recover benefit-of-the-bargain damages."). Berry's Motion explained that all of the lost-profits damages TMT pleads are unrecoverable benefit-of-bargain damages. Mtn. at 20. In response, TMT does not suggest otherwise, but contends that "TMT pleaded that it paid for Berry's fabric in reliance on Berry's representations" and "therefore pleaded out-of-pocket damages." Resp. at 20. As explained above, however, "damage to the product itself is essentially a loss to the purchaser of the benefit of the bargain." *Golden Spread*, 954 F.3d at 808-09; *see supra* § III.B. TMT pleads no contract it can enforce against Berry (much less one that was fraudulently induced), and only pleads benefit-of-the-bargain damages. Its fraud claim therefore fails.

## V. TMT abandoned its DTPA claims.

TMT concedes that its DTPA claims fail, so the Court should dismiss them. Resp. at 23.

## VI. TMT's Complaint should be dismissed with prejudice.

TMT should not get to re-plead. Berry filed its Motion two months ago, on July 18, affording TMT the opportunity to amend as-of-right within 21 days thereafter. *See* Fed. R. Civ. P. 15(a)(1)(B). TMT requested and received an extra 30 days to respond to the Motion, which has now run. *See* Dkt. 24 & Dkt. 25. TMT still has not actually sought leave to amend, and "[u]ndue delay" is itself good reason not to give TMT the opportunity to amend. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

TMT's Response adds as an afterthought that it "intends to amend the complaint to … address any other deficiencies found by the Court." Resp. at 23-24. That "bare request in an

9

opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought []—does not constitute a motion" for leave to amend. *Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003). On the contrary, "tack[ing] on a general curative amendment request to the end of [a] response in opposition to the defendants' motion to dismiss" avails the plaintiff nothing. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). Because TMT was "certainly aware of the defendants' objections to [its] complaint as written (because the objections appeared in the defendants' principal motion)," it was obligated at a minimum to "demonstrate to the court how [it] would replead [facts] more specifically if given the opportunity," or "proffer a proposed [first] amended complaint to the district court," or "suggest in [its] responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects raised by the defendants." *See id.* at 254-55.

The Court thus has good reason to dismiss TMT's claims without leave to amend. *See id.*; *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (upholding dismissal without leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and defendants to the substance of their proposed amendment"); *Jordan v. Brumfield*, 687 F. App'x 408, 416-17 (5th Cir. 2017) (affirming dismissal with prejudice where plaintiff's response to motion to dismiss asked for leave to amend "should the court find further factual allegations are necessary against any defendant," because "this is the sort of bare statement that does not constitute a proper request to amend"). TMT "deliberately chose to delay amending [its] complaint," and a "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Rozenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).

10

Berry therefore requests that TMT's Complaint be dismissed with prejudice.

Dated: September 14, 2023

Respectfully submitted,

  /s/ Brice A. Wilkinson
**GIBBS & BRUNS LLP**
Brice A. Wilkinson
State Bar No. 24075281
Federal ID No. 1277347
Mark A. Giugliano
Texas Bar No. 24012702
Federal ID No. 29171
mgiuliano@gibbsbruns.com
Jorge M. Gutierrez
Texas Bar No. 24106037
Federal ID No. 3157999
jgutierrez@gibbsbruns.com
Michael R. Davis
Texas Bar No. 24109793
Federal ID No. 3588027
mdavis@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 751-5258
Fax: (713) 750-0903

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Adam W. Green
Texas Bar No. 24027191
agreen@bakerdonelson.com
Katriel C. Statman
Texas Bar No. 24093197
kstatman@bakerdonelson.com
1301 McKinney, Suite 3700
Houston, Texas 77010
Tel.: (713) 650-9700
Fax: (713) 650-9701

**Attorneys for Defendants
Berry Global Inc. and Bonlam S.A. de C.V.**

## **CERTIFICATE OF SERVICE**

    I certify that on September 14, 2023, I electronically served all counsel of record by filing this Motion via the Court's CM/ECF system.

                                     /s/ Brice A. Wilkinson
                                     Brice A. Wilkinson