**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| TEXAS MEDICAL TECHNOLOGY INC. f/k/a TEXAS MEDICAL CENTER SUPPLY LLC, | § § § § | |
| | § | Case No. 4:23-cv-01537 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BERRY GLOBAL INC.; BONLAM, S.A. de C.V.; TEXTILES SHAMEN TEXAS LLC; TEXTILES SHAMEN, S.A. de C.V.; SHLOMO MIZRAHI; and ELIRAN SEGEL, | § § § § § | |
| | § | |
| Defendants | § | |

---

**BERRY AND BONLAM'S REPLY IN SUPPORT OF RULE 12(b)(6) MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

# <u>TABLE OF CONTENTS</u>

A.     TMT's Breach-of-Contract Claim Should Be Dismissed With Prejudice. ...................... 2

B.     TMT's Implied-Warranty Claim Should Be Dismissed With Prejudice. ....................... 2

    1.     TMT alleges neither the fabric's ordinary purpose nor its use for a particular purpose. ................................................................................................................ 2

    2.     TMT's conclusory allegation of reliance on Berry's skill and judgment does not support the fitness-for-a-particular-purpose warranty. .................................. 5

    3.     TMT conflates raw fabric with completed gowns and thus cannot get around *Hininger*. ............................................................................................................... 5

C.     Conclusion. .............................................................................................................. 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Physicians S.C. v. Conn. Gen. Life Ins. Co.*,
  2018 WL 1509120 (N.D. Tex. 2018)........................................................................2

*Advon Corp. v. Coopwood's Air Conditioning, Inc.*,
  517 F. Supp. 3d 656 (S.D. Tex. 2021) ....................................................................3

*Bob Davis Paint & Drywall Inc. v. Valspar Corp.*,
  452 F. Supp. 3d 589 (S.D. Tex. 2020) ....................................................................3

*Deeds v. Whirlpool Corp.*,
  2016 WL 6070552 (S.D. Tex. 2016) ......................................................................3

*Gen. Motors Corp. v. Brewer*,
  966 S.W.2d 56 (Tex. 1998)......................................................................................3

*Herbst v. Deere & Co.*,
  2021 WL 5567379 (S.D. Tex. 2021) ......................................................................4

*Hininger v. Case Corp.*,
  23 F.3d 124 (5th Cir. 1994) .................................................................................5, 6

*MAN Engines & Components, Inc. v. Shows*,
  434 S.W.3d 132 (Tex. 2014)....................................................................................1

*Reed v. Gautreaux*,
  2019 WL 6219780 (M.D. La. 2019) ........................................................................2

**Other Authorities**

Tex. Bus. & Com. Code § 2.314(b)(1)...........................................................................3

Defendants Berry Global, Inc. ("Berry") and Bonlam, S.A. de C.V. ("Bonlam") jointly file this Reply in support of their Motion to Dismiss the First Amended Complaint (ECF No. 37, hereinafter "Motion" or "Mtn.").

In resolving Berry's motion to dismiss TMT's Original Complaint, the Court dismissed all six of TMT's claims against Berry—five with permission to replead. *See* ECF No. 30. TMT's First Amended Complaint sought to resurrect only two: a breach of contract claim (on a third-party-beneficiary theory) and an implied-warranty claim. *See* 1st Am. Compl. (ECF No. 31) (hereinafter "Am. Compl.") ¶¶ 36-39 (breach of contract), ¶¶ 48-51 (implied warranty).

With its response to this Motion, TMT has now conceded (1) that there was a "fatal flaw" in TMT's third-party-beneficiary claim; (2) that TMT's "information and belief" pleading in support of that claim was "incorrect"; and (3) that the "contracts themselves do not, in fact, specifically identify TMT as a third-party beneficiary"—a missing "essential element of a third-party beneficiary claim." Pls. Resp. to Mtn. (ECF No. 40) (hereinafter "Response" or "Resp.") at 12-13. TMT accordingly concedes defeat on its breach-of-contract claim. *Id.* It should be dismissed with prejudice.

Only the implied-warranty claim remains. To be sure, TMT's contract review should have led TMT to concede the futility of this claim, too.  The same contract documents that doom its third-party-beneficiary claim unambiguously disclaim implied warranties (which likewise extinguishes any implied warranties passed down the supply chain). *See MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136 (Tex. 2014) ("[I]f the manufacturer at the point of the original sale makes a valid disclaimer of implied warranties, that disclaimer extends to subsequent purchasers."). Resolution on that basis, however, must await a motion that reaches beyond the pleadings.

1

But the expense of summary judgment practice should not be necessary. TMT's implied-warranty claim should not get beyond the pleadings. Despite the opportunity to replead, TMT still fails to allege facts sufficient to support its claim under either the implied warranty of merchantability or the implied warranty of fitness for a particular purpose.

**A.     TMT's Breach-of-Contract Claim Should Be Dismissed With Prejudice.**

Setting aside the insufficiency of TMT's pleadings in support of its contract claim against Berry (*see* Mtn. at 3-8), TMT now concedes that it "was not specifically identified as a third-party beneficiary in the Textiles Shamen-Berry contract" and thus that its breach-of-contract claim is meritless. That claim should thus be dismissed with prejudice. *See, e.g.*, *Advanced Physicians S.C. v. Conn. Gen. Life Ins. Co.*, 2018 WL 1509120, at *2 (N.D. Tex. 2018) (finding "it appropriate to dismiss [a] claim with prejudice" in "light of the plaintiff's concession"); *Reed v. Gautreaux*, 2019 WL 6219780, at *3 (M.D. La. 2019) (ruling that claim "should be dismissed with prejudice" because "Plaintiff concedes she lacks facts to plead [the] claim").

**B.     TMT's Implied-Warranty Claim Should Be Dismissed With Prejudice.**

**1.     TMT alleges *neither* the fabric's ordinary purpose *nor* its use for a particular purpose.**

TMT is correct that plaintiffs can plead contradictory claims in the alternative. *See* Resp. at 15. The problem is not that TMT pleads both that it used Berry's fabric for its ordinary purpose (as required for the implied warranty of merchantability) and that it used Berry's fabric for a particular purpose (as required for the implied warranty of fitness); it is that TMT pleads facts supporting neither. Berry raised this same fundamental failure in the previous round of briefing (*see* ECF No. 28 at 3-4), and TMT's implied-warranty claim was then dismissed without prejudice. But TMT still has not cured the deficiency. Although it alleges that the fabric Berry sold was used to manufacture "Level 3" surgical gowns, TMT does not allege that the manufacture of Level 3

2

surgical gowns was either the ordinary purpose of that fabric (as required for the implied warranty of merchantability, *see* Mtn. at 8-9) or an atypical, "particular" purpose (as required for the implied warranty of fitness for a particular purpose, *see id.* at 10-11). TMT can plead both, but it has to plead *facts* supporting both.[1]

TMT offers no such factual allegations. It alleges that Berry's fabric was insufficient for its "ordinary purpose," but not what the ordinary purpose of the fabric at issue *is*. *See* Am. Compl. ¶ 49. Merely stating that a product is unfit for its ordinary purpose does not suffice. *See, e.g.*, *Deeds v. Whirlpool Corp.*, 2016 WL 6070552, at *11 (S.D. Tex. 2016) (dismissing merchantability claim for failure "to specify the ordinary purpose of the evaporator pan"); *see also Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) ("A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could.").

Perhaps recognizing the infirmity of its "ordinary purpose" pleading, TMT's Response contends instead that Berry's fabric could not "pass without objection in the trade under the contract description." *See* Resp. at 18; TEX. BUS. & COM. CODE. § 2.314(b)(1). But TMT cites nothing for the proposition that this standard "means that the buyer must get what they ordered." *See* Resp. at 18. That is not at all what the "contract description" prong of the merchantability warranty means. The inquiry is *relative*; it turns on comparison to the quality of *other* products sold under the same contract description. *See Advon Corp. v. Coopwood's Air Conditioning, Inc.*,

---

[1] The case on which TMT relies provides useful guidance. There, the court allowed both a merchantability theory and a particular-purpose theory to go forward not because the plaintiff used both terms of art, but because the pleaded *facts* plausibly supported both relevant (albeit divergent) "purposes." In addition to alleging that paint was defective because it "failed to maintain its adherence to the houses" and thus failed in its "ordinary" purpose, *see Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 598 (S.D. Tex. 2020), the plaintiff *also* alleged that it used the paint "not on ordinary homes" but on "beachfront houses that are exposed to salt air, high heat, and high humidity. The latter factual allegation plausibly supported the inference that the paint was used for an atypical purpose. *Id.* at 598-99.

517 F. Supp. 3d 656, 665 (S.D. Tex. 2021) ("Texas courts hold that to 'pass without objection' means that 'a product must be of a quality comparable to other products that are sold in that line of trade under the contract description." (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.)); *see also* Mtn. at 3-4. TMT offers a vague allegation about an unidentified "specification" Berry promised to meet, *see* Am. Compl. ¶ 38, but alleges nothing about any other products that pass in the trade under that specification (or even whether the unidentified specification was something other than one-of-its-kind).

As to the implied warranty of fitness, TMT alleges that its purpose in buying the fabric was "the manufacture of Level 3 gowns pursuant to a supply contract with the federal government." *See* Resp. at 19. Maybe so. But that says nothing about whether this purpose was "unusual" or "out of the ordinary," as is essential to the implied warranty of fitness for a particular purpose. *See* Mtn. at 10-11 (collecting cases); *see also Herbst v. Deere & Co.*, 2021 WL 5567379, at *5 (S.D. Tex. 2021) (dismissing implied-warranty-of-fitness claim where plaintiff contended an "excavator was unfit for use at construction sites," because if "use at a construction site was not the usual and ordinary purpose for which the excavator at issue is used, [plaintiff] has not pleaded it").

TMT's recitation of terms of art—"ordinary purpose," "contract description," and "particular purpose"—does not get it past the 12(b)(6) stage. *See id.* at 9-11 (citing cases granting motions to dismiss for insufficient "purpose" pleading). TMT acknowledges the variety found in the world of surgical gowns: its Amended Complaint alleges at least three different "Levels" for surgical gowns, of which "Level 3" is the most stringent. *See* Am. Compl. ¶ 24. The problem with the fabric, according to TMT, was that it did not meet the "required levels of liquid permeability for Level 3 protection." Am. Compl. ¶ 36. But TMT claims neither (a) that the fabric Berry sold would typically be expected to meet "Level 3" standards for liquid permeability, or (b) that using

4

the fabric Berry sold to manufacture Level 3 gowns was atypical. TMT can try to do both, but it cannot do neither.

### 2. TMT's conclusory allegation of reliance on Berry's skill and judgment does not support the fitness-for-a-particular-purpose warranty.

Berry's Motion explained that the implied warranty of fitness for a particular purpose requires that the buyer have relied on the seller's skill or judgment to select suitable goods, and that a "rote recitation that [plaintiff] relied on [defendant's] skill or judgment in purchasing the [] fabric" is insufficient. *See* Mtn. at 11-12 (quoting *Mehler Texnologies, Inc. v. Monolithic Constructors, Inc.*, 2009 WL 3149383, at *4 (N.D. Tex. 2009)). In response, TMT claims to have alleged "TMT's conversations about the product, including what exactly to order, were with Berry." *See* Resp. at 19-20 (citing Am. Compl. ¶¶ 18, 50). But there are no such allegations in the Amended Complaint. TMT alleges only that Berry "request[ed] information" from TMT "related to the Product TMT needed to be sent to its Houston facility," *see* Am. Compl. ¶ 18, and that there were "various phone calls and other communications among the parties" revealing that "TMT was the sole supplier of personal protective equipment ('PPE') under a contract," *see id.* ¶ 50, to purportedly support the conclusory allegation that TMT "relied on the skill and judgment of Textiles Shamen, Berry, and/or Bonlam" in "purchasing" the fabric and/or gown, *see id.* The facts alleged do not even indicate that Berry made suggestions regarding the variety of fabric TMT should procure, much less that TMT relied on those suggestions. That Berry inquired regarding the product "TMT needed" indicates at most that Berry endeavored to adhere to TMT's request, the parameters of which TMT independently determined.

### 3. TMT conflates raw fabric with completed gowns and thus cannot get around *Hininger*.

Berry's Motion explained that the fabric it sold Textiles Shamen was a component in the gowns—manufactured by Textiles Shamen using the fabric among other "various materials," *see*

Am. Compl. ¶ 15—later sold to TMT. *See* Mtn. at 12-13. TMT's Response does not dispute that, as to TMT, Berry was an upstream component supplier. As TMT concedes, Berry's status as an upstream component supplier means that the implied-warranty claims fail unless TMT alleges facts indicating that it had an "expectation that [Berry] would resolve any problem they might experience with the **end product**." *See* Resp. at 20 (quoting *Hininger v. Case Corp.*, 23 F.3d 124, 128 (5th Cir. 1994) (emphasis added).

But TMT does not allege that it had any reason to believe Berry would cure any defects in the "end product"—that is, the gowns manufactured by Textiles Shamen. Instead, TMT's Response relies on its allegation that, based on pre-sale communications, "Berry and Bonlam [] knew that TMT would look to them to correct or address any issues with ***Berry and Bonlam's fabric.***" *See* Resp. at 21 (quoting Am. Compl. ¶ 18) (emphasis added). Fabric, as TMT acknowledges, is but a component of manufactured gowns. So the allegation that Berry would stand by its *fabric* has nothing to do with whether TMT reasonably expected Berry to stand by the "end product"—that is, the gowns.

The only other allegation on which TMT relies to avoid *Hininger* is even farther afield. According to TMT, *after the alleged gown defects arose*, "Berry's representatives stated that any additional fabric supplied and used by TMT would be a 'totally different product,' which was modified 'in order to warranty the level required.'" *See* Resp. at 21 (quoting Am. Compl. ¶ 18). TMT offers no reason (because there is none) that an after-the-fact discussion about a "totally different product" could plausibly have reached back in time to give TMT assurance that Berry would cure any defects in a different product sold months prior. And even at that, the conversation was again about *fabric*, not the "end product" contemplated by the *Hininger* exception.

C.     **Conclusion.**

Berry and Bonlam respectfully request that TMT's remaining claims against them be
dismissed with prejudice.


Dated: March 29, 2024                                              Respectfully submitted,

                                                                  */s/ Brice A. Wilkinson*

                                                                  **GIBBS & BRUNS LLP**
                                                                  Brice A. Wilkinson
                                                                  State Bar No. 24075281
                                                                  Federal ID No. 1277347
                                                                  Mark A. Giugliano
                                                                  Texas Bar No. 24012702
                                                                  Federal ID No. 29171
                                                                  mgiugliano@gibbsbruns.com
                                                                  Jorge M. Gutierrez
                                                                  Texas Bar No. 24106037
                                                                  Federal ID No. 3157999
                                                                  jgutierrez@gibbsbruns.com
                                                                  Michael R. Davis
                                                                  Texas Bar No. 24109793
                                                                  Federal ID No. 3588027
                                                                  mdavis@gibbsbruns.com
                                                                  1100 Louisiana, Suite 5300
                                                                  Houston, Texas 77002
                                                                  Tel.: (713) 751-5258
                                                                  Fax: (713) 750-0903

                                                                  **BAKER,   DONELSON,   BEARMAN,
                                                                  CALDWELL & BERKOWITZ, PC**
                                                                  Adam W. Green
                                                                  Texas Bar No. 24027191
                                                                  agreen@bakerdonelson.com
                                                                  Katriel C. Statman
                                                                  State Bar No. 24093197
                                                                  kstatman@bakerdonelson.com
                                                                  1301 McKinney, Suite 3700
                                                                  Houston, Texas 77010
                                                                  Tel.: (713) 650-9700
                                                                  Fax: (713) 650-9701

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 29, 2024, I electronically served all counsel of record by filing this Reply via the Court's CM/ECF system.

*/s/ Michael Davis*_____

Michael Davis